UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| ALAYNE GARRETT, CHARIE CARROLL, AND DEBBIE JONES, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 10-cv-2900-STA-cgc ) |
| SITEL OPERATING CORPORATION. | ) ) |
| Defendant. | ) |

_____

**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND COURT ASSISTED NOTICE**
_____

Before the Court is Plaintiffs' Motion for Conditional Collection Action Certification and Court Assisted Notice (D.E. # 27), filed on April 26, 2011. Defendant filed a Response in Opposition to Plaintiffs' Motion (D.E. # 35) on July 26, 2011. Plaintiffs filed a Reply to Defendant's Response (D.E. # 36) on August 9, 2011. For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

**BACKGROUND**

On July 21, 2010, Plaintiffs Alayne Garrett ("Garrett"), Charie Carroll,[1] and Debbie Jones ("Jones") filed a Complaint on behalf of themselves and those similarly situated against Defendant Sitel Operating Corporation. ("Defendant"). (D.E. # 1.) In the Complaint, Plaintiffs

---

[1] Defendant indicates that Plaintiff Carroll will be dismissed from the case (Def.'s Resp. in Opp'n to Pls.' Mot., D.E. # 35, at 4.) However, as of the date of this Order, no stipulation of dismissal has been entered regarding Plaintiff Carroll.

1

allege that Defendant violated the Fair Labor Standards Act ("FLSA") by not compensating them and other members of the purported collective action for overtime principal work activities performed off the clock.[2] (Am. Compl. ¶ 14-19.) Plaintiffs and other similarly situated employees were customer-service representatives ("CSRs") employed by Defendant "as hourly non-exempt call center workers tasked with assisting . . . Defendant's customers with billing issues, questions, price plans, and technical support." (Pls.' Br. in Supp. of Conditional Collective Action Certification and Ct. Assisted Notice, D.E. # 27-1, at 2.)

Defendant is a multinational corporation operating call centers in the United States and proving integrated customer management solutions. (Answer to Am. Compl. ¶ 5-6.) It maintains its North American headquarters and principal address in Nashville, Tennessee. (*Id.*) Defendant admits that it is an "employer" covered by the FLSA, that Plaintiffs were employees as contemplated by the FLSA at 29 U.S.C. § 203(e)(1), and that Plaintiffs worked for Defendant in Memphis, Tennessee. (*Id.* ¶ 2-5, 12.)

According to Plaintiffs, Defendant violated the FLSA by requiring employees to work in excess of forty hours per week without overtime compensation and by not compensating

---

[2] According to the Complaint, Plaintiffs bring this collective action on behalf of themselves and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, as follows:

> any and all persons employed by Defendant and performing off the clock work without being paid at any time during the three (3) years preceding the filing of this complaint throughout Defendant's Memphis, Tennessee, call center location.

(Am. Compl. ¶ 28.) As a preliminary estimate, Defendant stated that 1,737 CSRs were employed at the Memphis facility during the period. (Def.'s Resp. in Opp'n to Pls.' Mot., D.E. # 35, at 2.) However, the Memphis facility closed on July 2, 2010. (*Id.* at 2.) Therefore, the relevant period for the purported collective action will be from December 16, 2007 to July 2, 2010.

employees "for all hours worked performing preliminary and postliminary job duties." (Pls.' Br. in Supp. of Conditional Collective Action Certification and Ct. Assisted Notice, D.E. # 27-1, at 1.) Plaintiffs allege that they and other similarly situated CSRs were required to perform preliminary tasks prior to the start of their work shifts, and they were required to perform postliminary tasks after shutting down their workstations at the end of their shifts. (*Id.* at 2.) The preliminary tasks included booting up the computer and logging in to computer programs prior to clocking in, which took approximately seven to ten minutes. (Am. Compl. ¶ 14-17; Dec. of Emily Smith, D.E. # 27-2, at 1.) The postliminary tasks included deactivating the phone system to no longer receive calls and logging off and shutting down the computer, which took approximately five minutes. (Am. Compl. ¶ 18; Dec. of Emily Smith, D.E. # 27-2, at 1.)

Plaintiffs assert that the computerized time system used by Defendant did not begin recording compensable hours until all CSRs' preliminary tasks were completed and each workstation was ready to receive calls. (Pls.' Br. in Supp. of Conditional Collective Action Certification and Ct. Assisted Notice, D.E. # 27-1, at 2.) Thus, argue Plaintiffs, they were required to arrive earlier and stay later than scheduled to perform these tasks. (*Id.* at 3.) Plaintiffs also aver that they and other CSRs would be required to move from one desk to another at management's direction, but that they were not paid for that time. (Dec. of Emily Smith, D.E. # 27-2, at 1.)

Accordingly, Plaintiffs argue that Defendant did not compensate its CSRs "for all time worked performing activities that are an integral and indispensable part of a principal activity." (Pls.' Br. in Supp. of Conditional Collective Action Certification and Ct. Assisted Notice, D.E. # 27-1, at 4.) According to Plaintiffs, activities that are "integral and indispensable to a principal

3

activity" are also principal activities covered by the FLSA. (*Id.*) They assert that they have provided evidence from twelve employees—three named plaintiffs and nine declarants—who "perform[ed] essentially the same job duties, . . . perform[ed] preliminary and postliminary work at the direction of their supervisors, and are all owed wages and overtime compensation in accordance with the provisions of the FLSA." (*Id.* at 7.) Plaintiffs rely on the "modest factual showing required to grant conditional collective action certification" at this early stage of litigation to state that "[t]he substantial allegations presented herein are more than sufficient to meet the lenient conditional certification requirements." (*Id.* at 5-7.) Therefore, Plaintiffs request that the Court grant conditional collective action certification.

In response, Defendant points out that the CSRs worked on different campaign assignments for different clients and that the Memphis facility used "client-specific software programs and files, all of which were developed and maintained by each respective client." (Def.'s Resp. in Opp'n to Pls.' Mot., D.E. # 35, at 3-4.) According to Defendant, the CSRs had three methods of clocking in—either by phone ("pay from the switch"), computer ("web punch"), or manually—and those different methods prohibit Plaintiffs from identifying a group of similarly situated employees. Both Pay from the Switch and Web Punch used Kronos timekeeping systems.[3] (*Id.*) Defendant cites its commitment to FLSA compliance by providing new hires with timekeeping system training and requiring employees to review and acknowledge Defendant's associate handbook and timekeeping policies. (*Id.* at 5-8.) Defendant argues that its employees have the opportunity to report errors or violations of Defendant's policies and that

---

[3] When CSRs worked on campaigns on the call-center floor, they recorded their time through the telephone. (*Id.* at 4.) When they were training, CSRs recorded their time through the computer. (*Id.*)

4

the CSRs could use various forms to correct errors on time records. (*Id.* at 7-8.) Thus, Defendant argues that Plaintiffs have not made substantial allegations of a "common policy or plan"—written or unwritten—in violation of the FLSA. (*Id.* at 12-16.) Additionally, Defendants submit that Plaintiffs cannot establish a factual nexus between their claims and putative plaintiffs' claims due to different job responsibilities, the use of different timekeeping systems, and the lack of substantial allegations that pay from the switch timekeeping required CSRs to work off-the-clock. (*Id.* at 16-18.)

Defendant argues that Plaintiffs cannot show substantial allegations that they and putative plaintiffs "'were together the victims of a single decision, policy, or plan.'" (*Id.* at 8-11.) Defendant asserts that Plaintiffs cannot demonstrate a common policy or plan in violation of the FLSA due to Defendant's "facially lawful policies, procedures, and training." (*Id.* at 12-13.) Defendants attack Plaintiffs' fill-in-the-blank declarations as not "identify[ing] a single illegal [written or unwritten] policy, plan, or decision," which forms the similarity and factual nexus required for conditional certification. (*Id.* at 13.) Accordingly, Defendant requests that the Court deny Plaintiffs' motion for conditional collective action certification.

In reply, Plaintiffs state that the CSRs' work in Memphis "may have varied insignificantly, but that variance is insufficient to prevent notice in this case." (Pls.' Reply to Def.'s Resp., D.E. # 36, at 1.) Plaintiffs also argue that even though the CSRs clocked in and out via phone or computer, those differing methodologies do not alter the fact that Defendant required CSRs to arrive at work early to boot up their computers and pull up their systems before clocking in. (*Id.* at 2-3.) Additionally, Plaintiffs assert that Defendant's detailed description of its commitment to FLSA compliance has no bearing on the standards for conditional collective

5

action certification.  (*Id.* at 3-4.)

On April 26, 2011, Plaintiffs filed the instant Motion seeking the Court to (1) grant conditional collective action certification; (2) authorize court assisted notice, by first class mail, to all similarly situated persons employed by Defendant during the three years prior to the filing of this action informing them of their right to opt into this suit; and (3) direct Defendant to produce, to the extent it has not done so, a computer readable file containing the names, addresses, social security numbers, and telephone numbers of each potential opt-in plaintiff so that notice may be implemented.  (Pls.' Mot. in Supp. of Conditional Collective Action Certification, D.E. # 27, at 1.)

In support of the Motion, Plaintiffs filed eight declarations of CSRs who worked in Defendant's Memphis location.  (D.E. # 27-2.)  The declarants include Emily Smith, Brandon Still, Faye Banks, Nathaniel Truss, Jasmine Pace, Lateefah Boyd, Aston Cannon, and Angilar Jones.  (*Id.*)  All declarants worked as CSRs for Defendant from 2006 to 2010 and earned between $9.00 and $10.88 per hour.  (*Id.*)  They worked between thirty-six and forty hours a week, and they spoke to customers on the phone about issues related to technical support, billing and sales questions, price plans, and other duties.  (*Id.*)  All declarants clocked in via the phone, and they assert similar allegations to those raised by Plaintiffs in the complaint: that they were required to boot up and log into computer programs prior to clocking in and that they had to clock out before closing computer programs and shutting down the computer.  (*Id.*)  Plaintiffs also included an additional declaration with their Reply: the declaration of Edgar Bethany.  (D.E. # 36-1.)  His declaration differs from the other declarations in one significant way: he clocked in via the phone and the Kronos system.  (*Id.*)  He does not specify whether he used the Kronos

6

system to clock in via phone or computer.

## **ANALYSIS**

Section 216(b) of the FLSA provides that employees may recover unpaid overtime compensation by suing an employer on "behalf of . . . themselves and other employees similarly situated."[4] Specifically, § 216(b) provides that:

> Any employer who violates [the minimum wage and maximum hours provisions] of this title shall be liable to the employee or employees affected . . . . An action to recover [for such liability] may be maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.[5]

Therefore, to proceed collectively, named plaintiffs must both demonstrate that they are "similarly situated" to the employees they seek to notify and represent and give written consent to become a party. The Court notes that suits brought pursuant to § 216(b) are termed "collective actions" and are distinct from "class actions" in that similarly situated plaintiffs are permitted to "opt into" the suit rather than "opt out" as required by Rule 23 of the Federal Rules of Civil Procedure.[6]

To determine whether lead plaintiffs and opt-in plaintiffs are "similarly situated," courts generally employ a two-stage certification process.[7] The first stage occurs at the beginning of

---

[4] 29 U.S.C. § 216(b).

[5] *Id.*

[6] *Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006).

[7] *O'Brien v. Ed Donnelly Enters.,* 575 F.3d 567, 583 (6th Cir. 2009); *White v. Baptist Mem'l Health Care Corp.,* No. 08-2478, 2011 WL 1883959, at *3 (W.D. Tenn. May 17, 2011)

7

discovery, when the Court determines whether to "conditionally" certify the proposed class.[8] The purpose of "conditional certification" is to "provide notice to potential plaintiffs and to present them with an opportunity to opt in."[9] However, a court's certification of a class at the notice stage is "conditional and by no means final."[10] The second stage occurs after "all of the opt-in forms have been received and discovery has concluded."[11] The purpose of this second stage is for trial courts to "examine more closely the question of whether particular members of the class are, in fact, similarly situated."[12]

This case is at the first stage where the Court must determine whether to "conditionally" certify the proposed class. The named plaintiffs' burden at this stage is "fairly lenient" and requires only "a modest factual showing" that they are similarly situated to the other employees they seek to notify.[13]

Unfortunately, the FLSA does not define the term "similarly situated." In a 2009 opinion, *O'Brien v. Ed Donnelly Enterprises, Inc.*, the Sixth Circuit offered clarification on the term.[14] The Sixth Circuit stated that "[i]t is clear that plaintiffs are similarly situated when they

---

[8]     *Comer,* 454 F.3d at 546.

[9]     *Lindberg v. UHS of Lakeside, LLC,* 761 F.Supp.2d 752, 757-58 (W.D. Tenn. 2011).

[10]    *Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006).

[11]    *Id.*

[12]    *Id.* at 547.

[13]    *Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 547 (6th Cir. 2006); *White v. Baptist Mem'l Health Care Corp.,* No. 08-2478, 2011 WL 1883959, at *3 (W.D. Tenn. May 17, 2011); *Carter v. Jackson-Madison Cnty. Hosp. Dist.,* No. 1:10-cv-01155-JDB-egb, 2011 WL 1256625, at *14 (W.D. Tenn. March 31, 2011).

[14]    575 F.3d 567 (6th Cir. 2009).

suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."[15] However, the *O'Brien* court further explained that "[s]howing a 'unified policy' of violations is not required" to support certification of a collective action.[16] Rather, plaintiffs may meet the similarly situated requirement if they demonstrate, at a minimum, that "their claims [are] unified by common theories of [a] defendant['s] statutory violations, even if the proofs of these theories are inevitably individualized and distinct."[17] Unification around a common theory of violations is "one situation where a group of employees [can be] similarly situated."[18]

Importantly, because the determination at this stage is made using a "fairly lenient standard," the Sixth Circuit has recognized that it "typically results in conditional certification of a representative class."[19] Moreover, the presence of a defendant's written policy requiring compliance with FLSA provisions does not prohibit certification.[20]

Plaintiffs' theory as to Defendant's violation of the FLSA stems from preliminary and postliminary work performed by Plaintiffs and putative plaintiffs. That work involved booting up and shutting down computer programs and performing other tasks "essential to the

---

[15] *Id.* at 584.

[16] *Id.*

[17] *Id.* Under the circumstances of *O'Brien*, "[t]he claims were unified so, because plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets." *Id.* at 585.

[18] *Id.*

[19] *Comer,* 454 F.3d at 547 (internal quotes omitted).

[20] *See Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 759-60 (W.D. Tenn. 2011).

performance of their jobs duties" when they were not on-the-clock.  While Defendant points out that there were "at least two separate Kronos timekeeping systems used at the Memphis facility," as well as the option of entering time manually, the different methods of entering time do not alter Plaintiffs' allegations that they were required to do essential preliminary and postliminary tasks off-the-clock.[21]  Contrary to Defendant's assertions, Plaintiffs identify an unwritten policy that Defendant required them to arrive before and stay after their shift to perform tasks that were part of the principal activities of their jobs.

Defendant argues that courts require evidence of "'substantial allegations'" that the putative plaintiffs 'were together the victims of a single decision, policy, or plan.'"[22]  Defendant asserts that "substantial allegations" require plaintiffs to "present more than mere allegations."[23]  According to Defendant, substantial allegations require at least some evidence in support of the plaintiffs' allegations.[24]  But the Sixth Circuit does not apply a "substantial allegations" standard in evaluating whether to grant conditional certification under the FLSA.  Notably, the *O'Brien* court addressed Defendant's argument that the Court should apply more stringent levels of proof for conditional certification under the FLSA.  The Sixth Circuit noted that Congress did not

---

[21] All of the declarations attached by Plaintiffs to their Motion for Collective Action Certification indicate that the declarant clocked in and out by phone. (D.E. # 27-2.)  The declaration attached to Plaintiffs' Reply indicates that the declarant clocked in by "Kronos and phone." (D.E. # 36-1.)  According to Defendant, both the computer and phone methods of clocking in were controlled by separate Kronos timing systems. (D.E. # 35 at 4.)  In their Complaint, Plaintiffs do not specify which method they used to clock in for work.  Therefore, declarants and Plaintiffs may have used different methods to record their time.

[22] (Def.'s Resp. in Opp'n to Pls.' Mot., D.E. # 35, at 10-11.)

[23] (*Id.* at 11.)

[24] (*Id.*)

import into the FLSA the more stringent criteria for class certification used under Federal Rule of Civil Procedure 23, and the FLSA's "similarly situated" requirement is also less stringent than the joinder standard of claims "arising out of the same action or occurrence."[25] Courts in the Sixth Circuit have emphasized the leniency of the standards used at the first stage of certification under the FLSA,[26] and the Court will evaluate Plaintiffs' conditional certification claims under this standard.

Therefore, the Court finds that class certification is appropriate in this case. Plaintiffs have made a modest showing that Defendant had an unwritten policy requiring them to perform essential tasks, including booting up and shutting down their computers, off the clock. This case is in the first stage of the certification process. In light of the "fairly lenient standard" applied during this phase, the Court finds that this common theory is sufficient to show that Plaintiffs and the proposed class members are "similarly situated." Even taking into account Defendant's objections, the Court finds that Plaintiffs and declarants have presented a common theory: the requirement to perform preliminary and postliminary tasks, such as booting up and shutting down computers, off the clock and without compensation. The Court finds this common theory a sufficient basis to find that Plaintiffs and the proposed class members are "similarly situated."

## **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Plaintiffs' Motion and finds that Plaintiffs have satisfied the modest factual showing required to conditionally certify the class and issue court-supervised notice. The Court therefore conditionally certifies a class of "all

---

[25] *O'Brien*, 575 F.3d at 584.

[26] *See generally id.*; *Lindberg*, 761 F. Supp. 2d 752.

persons employed by Defendant at Defendant's Memphis, Tennessee, call center location between the three years preceding the filing of this action and the closing of the Memphis facility on July 2, 2010, who performed preliminary and postliminary tasks off-the-clock without compensation."

In addition to conditionally certifying the class, the Court orders the parties to meet and confer to draft a mutually agreeable notice, which will be filed with the Court within twenty (20) days of the entry of this order. If the parties cannot arrive at a mutually agreeable notice, the parties shall file separate proposed notices. Any response or objection to these separate proposed notices must be filed within fourteen (14) days of entry of the separate proposed notice. Moreover, Defendant is directed to provide Plaintiffs a list of names and last known addresses and telephone numbers of the covered employees.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 18, 2011.